1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    NORMAN MCGINNIS, JR.,                   Case No.  13-cv-01070-JD

                     Petitioner,
8
                                             **ORDER DENYING PETITION FOR**
9            v.                              **WRIT OF HABEAS CORPUS**

10   P. D. BRAZELTON,

                     Respondent.
11

12

13       **I.    INTRODUCTION**

14           Petitioner, a state prisoner, has filed a pro se petition for writ of habeas corpus pursuant to

15   28 U.S.C. § 2254.  Petitioner presents three claims regarding ineffective assistance of appellate

16   counsel: (1) failure to adequately address a jury instruction issue in the reply brief on direct

17   appeal; (2) failure to challenge the two-strike sentence; and (3) failure to challenge the five-year

18   sentence enhancement.  For the reasons set forth below, the petition is denied.

19       **II.   BACKGROUND**

20           After a jury trial, petitioner was found guilty of first degree murder which was modified by

21   the trial court to second degree murder.  Clerk's Transcript ("CT") at 651, 722-30.  Petitioner was

22   sentenced to 36 years to life in state prison.  CT at 752-55.  Petitioner appealed, and the California

23   Court of Appeal affirmed the judgment in an unpublished opinion.  *People v. McGinnis*, No.

24   A130252, 2011 WL 5520231 (Cal. Ct. App. 2011).  The California Supreme Court denied review.

25           Petitioner filed a state habeas petition with the Contra Costa Superior Court, asserting the

26   same claims he is asserting in this petition, which was denied in a reasoned opinion.  Petition,

27

28

United States District Court
Northern District of California

Attachment B.[1]  His petitions to the California Court of Appeal and California Supreme Court were denied.

Petitioner filed this federal petition for writ of habeas corpus on March 8, 2013.  The Court issued an order to show cause why the petition should not be granted.  Respondent filed an answer, and petitioner filed a traverse.

**III.   STATEMENT OF FACTS**

The California Court of Appeal summarized the facts as follows:

> Defendant and the murder victim, Wyander Ricketts, known as Ryan, met in 2003 and were married in February of 2008.
>
> [Defendant and Ricketts had a tumultuous relationship during the time from the marriage to Ricketts' death.  Ricketts had an affair, and despite attempts at reconciling with defendant, she continued the affair.  On March 4, 2009, the date of the murder, defendant became aware that the affair was still on going.]
>
> On March 4, 2009, defendant went home to find Ricketts seated in front of a vanity table in the upstairs bathroom.  He began to explain to Ricketts the news he heard earlier that day, but she told him not to bother her. [...]  Ricketts cursed and yelled at him to, "Get out of here."  Defendant repeatedly asked Ricketts to admit her relationship with "this guy." Finally, in a "fury," she mentioned that the sex was "good to her," and called defendant a "little-dick mother fucker."
>
> Ricketts grabbed an exercise dumbbell from the vanity and threw it at defendant as she told him she was seeing someone else.  Defendant deflected the dumbbell away and moved aside.  Ricketts reached for the dumbbell, but defendant grabbed it and "ripped it from her."  As defendant snapped the dumbbell into his hand, it struck Ricketts in the face.  She swore at defendant and fell back into the vanity.  Defendant testified that he thought Ricketts then grabbed for scissors on the vanity table, whereupon he moved toward her and "hit her real hard" twice with the dumbbell.  Ricketts cowered, threw her hands up, and swore at defendant again.  Defendant noticed that she did not have the scissors in her possession as she fell forward to the floor on her knees, then onto her chest.  He did not hit her again.  Defendant knew Ricketts "was very hurt."  She had a "huge pile of blood" coming from her head.  Defendant heard a big sigh from her, followed by an exhale, and realized she was dead.  He attempted to give her CPR, to no avail.  Defendant testified that he did not intend to kill his wife.
>
> After Ricketts was dead, defendant stayed with her in the bathroom for about two hours because he "just wanted to be with her ."  He

---

[1] Petitioner argued that appellate counsel should have better argued the jury instruction claim.  The underlying jury instruction claim was denied on direct appeal.

United States District Court
Northern District of California

moved the body out of the bathroom, down the stairs, and laid her on the bottom steps of the stairway.  Defendant then "started drinking" alcohol as he cleaned a little and remained with the victim at the bottom of the stairs.  He fell asleep on the stairs, and when he awakened not long after 6:00 a.m., he decided to call Ricketts' son and other members of the family to "tell them" what happened.

[...]

Examination of the crime scene revealed blood stains on the bottom of the stairs and the victim's hair, along with "contact bloodstains" from a hand or other source "throughout her body."  A considerable amount of dark, concentrated blood was found in the upstairs master bathroom, and additional blood stains were observed in the bathroom sink, on towels and a hair weave in the bathroom, and on a dumbbell on the bathroom floor.  A bloody palm print on the bathroom bathtub "was made by the right palm" of defendant.  A visible blood trail started in the upstairs bathroom and ended on the stairs near the victim's body.  The autopsy determined that the cause of the victim's death was "blunt force head injury due to multiple blows to the head" that damaged the "microscopic structures of the brain causing them not to function anymore."

Lodged Exh. 6 at 2-7.

## IV.   STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may consider a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's

United States District Court
Northern District of California

1   decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

2   "[A] federal habeas court may not issue the writ simply because that court concludes in its

3   independent judgment that the relevant state-court decision applied clearly established federal law

4   erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.  A

5   federal habeas court making the "unreasonable application" inquiry should ask whether the state

6   court's application of clearly established federal law was "objectively unreasonable."  *Id*. at 409.

7   **V.     INEFFECTIVE ASSISTANCE OF COUNSEL**

8       **A.     Legal Standard**

9          A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

10   Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance

11   of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The Due Process Clause of the

12   Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his

13   first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

14   assistance of appellate counsel are reviewed according to the standard set out in *Strickland*.  *See*

15   *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir.

16   2010*); Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  The benchmark for judging any

17   claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the

18   adversarial process that the trial cannot be relied upon as having produced a just result.  *Strickland*

19   *v. Washington*, 466 U.S. at 668.

20          Under the *Strickland* test, a federal habeas petitioner must establish two things: (1) that

21   counsel's performance was deficient because it fell below an "objective standard of

22   reasonableness" under prevailing professional norms; and (2) that petitioner was prejudiced by

23   counsel's deficient performance, that is, that "there is a reasonable probability that, but for

24   counsel's unprofessional errors, the result of the proceeding would have been different."

25   *Strickland*, 466 U.S. at 687-88, 694.   A reasonable probability is a probability sufficient to

26   undermine confidence in the outcome.  *Id*.

27          The *Strickland* framework for analyzing ineffective assistance of counsel claims is

28   considered to be "clearly established federal law, as determined by the Supreme Court of the

United States District Court
Northern District of California

1   United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Cullen v. Pinholster*, 131 S.

2   Ct. 1388, 1403 (2011); *Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).  Because of the

3   difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's

4   conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at

5   689.

6   **B.    Analysis**

7   **i.    Failure to Adequately Address the Jury Instruction Issue in Appellate
        Reply Brief**

8

9          Petitioner testified at trial but was unable to explain some details about the

10  evidence presented against him.  Just prior to closing arguments, the trial court instructed the jury

11  with CALCRIM No. 361:

12          [i]f the defendant failed in his testimony to explain or deny evidence
            against him, and if he could reasonably be expected to have done so
13          based on what he knew, you may consider his failure to explain or
            deny in evaluating that evidence.  Any such failure is not enough by
14          itself to prove guilt.  The People must still prove each element of the
            crime beyond a reasonable doubt.  [¶]  If the defendant failed to
15          explain or deny, it is up to you to decide the meaning and
            importance of that failure.
16

17  RT at 1370.  Petitioner argued on appeal that this instruction damaged his defense to the point of

18  prejudice because it effectively violated his Fifth and Fourteenth Amendment rights to testify in

19  his defense and to a fair trial, respectively, and that the instruction was not supported by the

20  evidence in this case.  The appeal was denied.

21          In this federal petition, petitioner claims that appellate counsel only addressed case law,

22  and not the trial record specifically, in his opening brief on direct appeal.  However, on pages 24

23  and 25 of Appellant's Opening Brief (Lodged Exh. 3), appellant counsel specifically mentioned

24  and cited to the Reporter's Transcript of the petitioner's trial testimony.  The brief summarized

25  testimony, including petitioner learning that his wife, the victim, was still engaged in an affair;

26  that she insulted petitioner and told him how good the sex was with the other man; and that she

27  threw a dumbbell at petitioner.  Appellate counsel further argued in the brief that, had the jury

28  been properly instructed, this evidence could have reasonably led to a verdict lesser than that of

United States District Court
Northern District of California

United States District Court
Northern District of California

first degree murder.  Lodged Exh. 3 at 24-25.  Additionally, appellate counsel argued that even though petitioner could not recall every single moment of the night in question, his testimony was corroborated by other witnesses, specifically expert witnesses.  *Id.* at 25.  The California Court of Appeal denied the jury instruction claim in a detailed reasoned opinion on direct appeal. *McGinnis*, 2011 WL 5520231 at *4-7.  The Superior Court for Contra Costa County in denying petitioner's habeas petition found that, "[o]n appeal counsel made a strong argument regarding an error in jury instructions.  Success would have meant reversal of the judgment."  Petition, Attachment B.

Petitioner's argument in his federal habeas petition is that, in addition to an inadequate opening brief, appellate counsel filed an inadequate reply brief.  Specifically, he failed to reply to respondent's rebuttal in the reply brief.  Petition at 23.   In appellant's reply brief, counsel simply stated that, "[a]ppellant's position on this issue is fully explicated in his opening brief."  Lodged Exh. 5 at 1.  Petitioner also points to counsel's failure to cite to expert witness testimony regarding the injuries to the victim's face and to the state of the bathroom.  Petition at 15.

To satisfy the first prong of *Strickland*, petitioner must show that that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.  With regard to the jury instruction issue, counsel did, in fact, adequately address this issue in petitioner's opening brief.  He not only cited case law, but also referred directly to trial testimony that he believed made the instruction inappropriate for trial.

Petitioner claims that a failure to further expound the issue in the reply brief constituted ineffective assistance of counsel.  A reply brief is not a critical element in evaluating ineffective assistance.  *U.S. v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986).  In addition, petitioner has not identified any arguments that, had they been included in the reply brief, would have changed the outcome of this appeal under the second prong of *Strickland*.  Jury instruction CALCRIM 361 specifically addressed petitioner's testimony.  Petitioner argues that his testimony was sufficient to explain or deny the evidence against him and that, even if it was not, expert testimony corroborated his testimony.  CALCRIM 361 applies solely to the defendant's testimony and any failure to explain or deny evidence against him therein.  Therefore, this argument is unpersuasive.

On direct appeal, the California Court of Appeal found ". . . in the record some evidentiary support for [CALCRIM 361]." Specifically, the court found that:

> [...] defendant's testimony failed to account for or refute some of the evidence that described the multiple injuries sustained by the victim, and how they were inflicted, the physical evidence of the state of the bathroom and the items in it, and expert opinion testimony as to the position of the victim when the blows were inflicted on her. Thus, the record supports the suggested inference that defendant failed to explain incriminating evidence.

*McGinnis*, 2011 WL 5520231, at *7. Even if the instruction had been given erroneously, the instruction was not enough to taint the entire trial and unduly prejudice the defendant. A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the deficient instruction by itself so infected the entire trial that the resulting conviction violates due process. *Id*. at 72. Petitioner has failed to meet this high threshold.

Moreover, the California Supreme Court in *People v. Saddler* rejected that CALJIC 2.62, a jury instruction similar to CALCRIM 361, may result in jury prejudice. 24 Cal. 3d 671 (1979); *People v. Rodriguez*, 170 Cal. App. 4th 1062, 1067 (Cal. Ct. App. 2009). In *Saddler*, the court explained a defendant's due process rights are not violated by CALJIC 2.62 because the instruction contains cautionary language reminding the jury of the presumption of innocence. *Saddler*, 24 Cal. 3d at 679-80 (quoting CALJIC 2.62: "the failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt"). *See also Stanton v. Janda*, 2013 WL 789085, at *41-47 (E.D. Cal., March 1, 2013) (CALCRIM 361 which allows the jury to draw an adverse inference did not violate Supreme Court authority).

### ii.   Failure to Address the Two-Strike Sentence

Petitioner claims that appellate counsel should have challenged the doubling of his sentence based on a prior strike. Petitioner believes that this sentencing enhancement, which was applied because of his prior 1987 conviction for assault with a deadly weapon, violated his

United States District Court
Northern District of California

1987 plea bargain.  Petitioner also argues that the prosecutor failed to plead and prove the prior as being a serious felony qualifying a strike.

The Supreme Court has held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  Upon review of the plea bargain in question, there is no evidence of an agreement in which the plea could not be used as a sentence enhancement and/or strike in the case of another felony conviction.  Petition at 103-105.  Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997).

In this case, appellate counsel did not address the two-strike sentencing enhancement.  If he had, the claim would have arguably been frivolous because of the lack of a promise by the prosecutor that the conviction resulting from the 1987 plea bargain could not be used to enhance a sentence for a future felony conviction.  Petitioner argues that his prior conviction should have been pled and proved by the prosecutor in this case to be a violent and/or serious felony.  Upon reviewing the trial record, it is apparent that petitioner admitted to the prior assault with a deadly weapon in his testimony, and that defense counsel made no objection to admitting the criminal complaint and subsequent conviction into evidence.  RT at 999, 1222-23, 1451-53.  This claim is denied.

### iii.    Failure to Address the Five-Year Enhancement

Petitioner argues that appellate counsel was ineffective in failing to raise a challenge to the five-year sentence enhancement.  Petitioner relies on *People v. Jones* in arguing that the two-strike doubling and five-year enhancement cannot both be applied to his sentence.  5 Cal. 4th 1142 (1993).  Petitioner misunderstands that case.  In *People v. Jones*, the California Supreme Court ruled that sentence enhancements could not be applied under both California Penal Code Section 667 and California Penal Code Section 667.5.  *Id*. at 1149-53.  Those sections, respectively, refer to sentence enhancements for prior convictions and prior prison terms.  While both sections are designed to increase sentences for recidivist offenders, no dual sentence

United States District Court
Northern District of California

1    enhancement may be applied under both sections. *Id.* In the instant case, petitioner has been

2    sentenced according to California Penal Code section 667(a)(1) and 667(e). These sentence

3    enhancements only increase his sentence based upon his prior serious felony, and not any prison

4    term he may have served.

5           Moreover, California Penal Code section 667(e) clearly explains that any sentence

6    enhancement under that subsection shall apply, "in addition to any other enhancement or

7    punishment provisions which may apply." Cal. Penal Code § 667(e). California courts have held

8    that a prior serious or violent felony can be used as both a five-year prior enhancement and a

9    strike. *People v. Nelson*, 42 Cal. App. 4th 131, 136-37 (Cal. Ct. App. 1996). Petitioner seems to

10   concede that this is a serious felony, since he was convicted of assault with a deadly weapon, and

11   California courts would agree. *See People v. Delgado*, 43 Cal. 4th 1059, 1065 ("a conviction

12   under the deadly weapon prong of section 245(a)(1) is a serious felony, but a conviction under the

13   [great bodily injury] prong is not."). As appellate counsel would have not prevailed on a claim, he

14   was not ineffective for failing to raise it. *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). This

15   claim is denied.

16   **VI.    CONCLUSION**

17          The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of

18   appealability will not issue. See 28 U.S.C. § 2253(c). This is not a case in which "reasonable

19   jurists would find the district court's assessment of the constitutional claims debatable or wrong."

20   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of

21   respondent and close the file.

22          **IT IS SO ORDERED.**

23   Dated:  August 6, 2014

24   _____

25   JAMES DONATO
     United States District Judge

26

27

28

9

1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    NORMAN MCGINNIS, JR.,                    Case No.  13-cv-01070-JD

               Plaintiff,
8
                                             **CERTIFICATE OF SERVICE**
9         v.

10   P. D. BRAZELTON,

               Defendant.
11

12        I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S.
     District Court, Northern District of California.
13

14        That on 8/7/2014, I SERVED a true and correct copy(ies) of the attached, by placing said
     copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
15   said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
     located in the Clerk's office.
16

17   Norman  McGinnis, Jr.
     California State Prison-Solano
     2100 Peabody Road
18   P.O. Box 4000, A6-142L
     Vacaville, CA 95696
19

20

21   Dated: 8/7/2014

22

23                                           Richard W. Wieking
                                             Clerk, United States District Court
24

25

26                                           By:_ *Lisa R. Clark* _

27                                           LISA R. CLARK, Deputy Clerk to the
                                             Honorable JAMES DONATO
28

                                          10